# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Campbell*, 2012 IL App (1st) 101249

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER CAMPBELL, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-1249 |
| Filed | September 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution arising from a gang-related shooting, the trial court did not err in admitting evidence of defendant's gang membership, failing to ask the prospective jurors if they could be impartial in view of the gang evidence, failing to advise the jury of the limited purpose of gang evidence or failing to provide an instruction on second degree murder. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-CR-8412; the Hon. Thomas V. Gainer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on          Michael Finn, of Law Offices of Michael Finn, of Chicago, for appellant.
    Appeal

                    Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Marie
                    Quinlivan Czech, and Nancy Colletti, Assistant State's Attorneys, of
                    counsel), for the People.


Panel               JUSTICE MURPHY delivered the judgment of the court, with opinion.

                    Justices Quinn and Connors concurred in the judgment and opinion.


**OPINION**

¶ 1     Following a jury trial, defendant Walter Campbell was found guilty of one count of first degree murder and two counts of attempted first degree murder and was sentenced to 50 years' imprisonment for first degree murder and two concurrent 28-year terms for attempted first degree murder to be served consecutively to the murder sentence. On appeal, defendant contends that he was denied a fair trial where the trial court admitted evidence showing that he was a gang member, failed to inquire during *voir dire* whether any prospective jurors would have been unable to be fair and impartial due to evidence of his gang membership, and failed to advise the jury of the limited purpose for which such evidence could be considered. Defendant also contends that trial counsel was ineffective for failing to request a limiting instruction regarding the gang membership evidence and that he was denied a fair trial where the prosecutor made improper comments during rebuttal argument. In addition, defendant contends that the court erred by failing to provide the jury with a modified version of Illinois Pattern Jury Instructions, Criminal, No. 3.11 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.11) prepared by defense counsel or an instruction for second degree murder. Defendant further contends that the court erred in making a number of rulings during defense counsel's opening statement, cross-examination of two State witnesses, and closing argument. For the reasons that follow, we affirm.


¶ 2                            BACKGROUND

¶ 3     Defendant and codefendant, Victor Perry, were charged with the first degree murder of Chadwick Jamison, the attempted first degree murders of Christopher Roundtree and Robert Walton, and aggravated discharge of a firearm. At trial, Roundtree testified that he was a member of the Black P. Stone street gang and that beginning about 3 p.m. on March 4, 2005, he rode around with Jamison, Walton, and Charles Gill in Jamison's Chevrolet Lumina while they drank alcohol and smoked marijuana. Shortly before 10 p.m. that night, the four of them stopped at a gas station located within Black P. Stone territory at the intersection of 66th Street and Stony Island Avenue. Roundtree saw defendant, Perry, and some of their friends at the gas station, and believed they were all members of the Gangster Disciples gang.

Roundtree knew defendant and Perry from the neighborhood and thought defendant was a Gangster Disciple because he hung around with people from that gang. Defendant had a purple Dodge Intrepid with him and Perry had a purplish Buick Riviera.

¶ 4 Upon arriving at the gas station, Jamison jumped out of his car, walked to within three or four feet of defendant and asked him "what the fuck y'all doing up here?" Defendant responded that Jamison should leave before he got himself killed. Roundtree and Gill then exited Jamison's vehicle and defendant told Gill "to tell his little boy to get off that before he get himself–or before I kill his ass." A number of people affiliated with the Black P. Stones began arriving at the gas station, including Walton's brother, and defendant and Perry entered their vehicles, pulled out of the gas station, and drove away. As they did so, defendant hit Jamison's car, and Jamison grabbed a baseball bat from Walton's brother's car and threw it at defendant's vehicle as he drove away.

¶ 5 Roundtree, Jamison, Walton, and Gill then reentered Jamison's car, and Jamison drove them to Roundtree's house to drop off Gill. Jamison pulled up in the alley behind Roundtree's house, and Roundtree exited the vehicle so he could close the gate after Gill went inside. While at the gate, Roundtree saw Perry's vehicle pull up at the mouth of the alley, heard about five gunshots come from Perry's car, and jumped inside Jamison's car. Although the back window of Jamison's vehicle was shot out by the gunshots, none of the occupants of the car were injured. After the shooting, Perry's car drove away, Gill ran inside Roundtree's house, and Jamison drove away with Roundtree and Walton in his vehicle.

¶ 6 Shortly thereafter, Roundtree observed that defendant and Perry were following them in defendant's car. Jamison drove faster to try and get away, but crashed into a pole near 65th Street and Blackstone Avenue. After the crash, defendant's vehicle slowly approached Jamison's car from behind until it stopped and defendant emerged holding a semiautomatic handgun. Jamison put the car in reverse, and defendant ran toward the car as he did so and fired about five shots at the vehicle through the empty back window from about 10 feet away. Roundtree, who was sitting in the front passenger seat, put Jamison's car into drive, and Jamison hit the accelerator, which caused the vehicle to jump and crash into the back of a parked car. Defendant then ran toward the driver's side of Jamison's vehicle and fired about five more shots before his gun jammed and he released the shells from his gun. As defendant was doing so, Walton jumped out of the backseat of Jamison's vehicle and ran away. Once defendant's gun was no longer jammed, he fired it at Walton as he ran. In the meantime, Roundtree and Jamison were both trying to exit through the front passenger door of Jamison's car and Jamison then tried to exit through the same rear door as Walton. Defendant fired about five more shots inside Jamison's car, and Roundtree felt Jamison's body drop as he exited the vehicle. Defendant then ran back to his car and entered the passenger door, and Perry, who was in the driver's seat, drove away. Roundtree saw Jamison's body hanging out the back of the car and could hear him choking on his blood. Although one of the bullets had grazed Roundtree on his side, he was otherwise uninjured by the shooting.

¶ 7 The police arrived at the scene about one minute after Perry and defendant had driven away, and Roundtree spoke to a detective there and was then taken to the police station. About 3:30 a.m. on March 5, 2005, Roundtree was presented with a set of photographs by

a police detective from which he identified a picture of the person who killed Jamison and a picture of the driver of the shooter's car. About 4:50 p.m. that same day, Roundtree viewed a lineup at the police station and identified defendant as the shooter and Perry as the man who drove his car following the shooting.

¶ 8   On cross-examination, Roundtree stated that while he was obligated by his gang loyalty to come to the aid of other members of his gang, he was not required to do harm to members of other gangs. Roundtree also stated that the Black P. Stones and Gangster Disciples were at war at the time of the shooting and that if he had come in contact with a Gangster Disciple at that time, he probably would have beaten him up, but would not have lied to the police about him. Roundtree further stated that he provided the police with a statement at about 9:15 p.m. on March 5, 2005, and the prosecutor stipulated that in that statement, Roundtree did not relate that he had heard defendant tell Jamison that he would kill him during their verbal confrontation at the gas station.

¶ 9   Walton testified that he spent the daytime hours of March 4, 2005, smoking marijuana and drinking alcohol with Jamison and Roundtree, fellow members of the Black P. Stone gang, as Jamison drove them around in his white Chevrolet Lumina. About 9 p.m. that evening, they picked up Gill and went to a gas station located in Black P. Stone territory at 66th Street and Stony Island Avenue. When they arrived, Walton saw defendant and Perry, members of the rival Gangster Disciples gang, in the gas station parking lot, and also saw defendant's maroon Intrepid and Perry's maroon Riviera. Walton and Jamison exited the vehicle, and Jamison told defendant and Perry that they were not supposed to be at that gas station. Walton's brother arrived at the station shortly thereafter in his Toyota Camry with additional members of the Black P. Stones, and defendant and Perry then entered their cars and drove away. As defendant did so, he hit Jamison's car and said he would return "and kill all of you hook-ass niggers."

¶ 10   Walton, Jamison, Roundtree, and Perry then reentered Jamison's car, and Jamison drove them to the alley behind Roundtree's house to drop off Perry. Roundtree exited the vehicle and Gill was about to get out of the car when Walton saw Perry's vehicle pull up at the side of the street by the alley and heard about eight gunshots, which destroyed the back window of Jamison's car. Perry's vehicle then drove away, Gill exited Jamison's car and went in Roundtree's house, and Roundtree entered the front passenger seat of Jamison's car. Jamison pulled out of the alley and was driving around the neighborhood when Walton saw defendant's vehicle chasing his brother's car. Walton's brother was able to drive away, and defendant then turned his car around and chased Jamison until Jamison's car slid into a pole at 65th Street and Blackstone Avenue. Walton saw defendant exit from the driver's seat of his vehicle while holding a semiautomatic handgun and run toward Jamison's car, firing about 15 shots as he did so. Defendant's gun then jammed, and Walton jumped out of Jamison's car and ran away as defendant started shooting at him. Walton looked back when the gunshots had stopped and saw defendant run back to his car and enter on the passenger side before the car pulled away.

¶ 11   Walton continued running until he was stopped by police about two blocks away from the shooting. Walton was then taken to the police station, where he told the detectives that defendant was the shooter and identified defendant from a set of photographs shown to him

on a computer. On March 6, 2005, Walton returned to the police station and viewed a lineup from which he identified the shooter. Walton further testified that although he and Roundtree were both taken to the police station following the shooting, they were kept separate from one another while he was there.

¶ 12       On cross-examination, Walton stated that about 4:15 a.m. on March 6, 2005, he spoke with an assistant State's Attorney, that the assistant State's Attorney prepared a written statement from their conversation and read it back to him, and that he then signed each page. Walton also stated that although he told the assistant State's Attorney that defendant had said at the gas station that he would come back to kill him and Jamison, the assistant State's Attorney did not include that part when she read the statement back to him and he did not alert her of the error. In addition, Walton stated that although it was his gang's policy to do harm to members of a rival gang and he and defendant were in rival gangs, it was not his gang's policy to lie to police about a rival gang member. Walton further stated that Jamison threw a baseball bat at defendant's car as he drove away from the gas station. On redirect examination, Walton testified that defendant said at the gas station that he would be back "to clear him up" and that he believed defendant had intended that to mean that he would kill him and Jamison.

¶ 13       Chicago police forensic investigator Robert Tovar testified that about 10:30 p.m. on March 4, 2005, he went to the area of 6502 South Blackstone and observed a Chevrolet Lumina, which had been damaged and appeared to have struck a parked car. Investigator Tovar further testified that he observed and recovered firearm evidence that was strewn around the street and the car. Forensic scientist Fred Tomasek, an expert in firearms identification, testified that he analyzed the firearm evidence collected by Investigator Tovar and determined that the fired cartridge cases had all been fired from the same firearm; that the fired bullets, bullet jackets, and bullet jacket fragments had all been fired from the same firearm; and that it was not possible to compare the fired cartridge cases with the bullets, jackets, and fragments.

¶ 14       Based on this evidence, the jury found defendant guilty of the first degree murder of Jamison and the attempted first degree murders of Roundtree and Walton. Defendant was then sentenced to 50 years' imprisonment for murder and two concurrent 28-year terms for attempted murder to run consecutively to the sentence for murder.

¶ 15                                        ANALYSIS
¶ 16                                    I. Gang Evidence
¶ 17       Defendant contends that he was denied a fair trial where the trial court admitted evidence of his gang membership, failed to ask prospective jurors during *voir dire* whether they could be fair and impartial in light of the gang membership evidence, and failed to advise the jury of the limited purpose for which such evidence could be used. Defendant also contends that counsel was ineffective for failing to request a special jury instruction regarding such evidence.

¶ 18                                   A. Admissibility

¶ 19      Defendant asserts that the trial court erred by admitting evidence showing that he was a member of a gang, and the State first responds that he has forfeited this issue by failing to object to the challenged evidence at trial or raise this issue in his posttrial motion for a new trial. To preserve an issue for appeal, a defendant must object at trial and raise the issue in a posttrial motion. *People v. Baez*, 241 Ill. 2d 44, 129 (2011). Defendant maintains that this court should nonetheless review the issue under the plain-error doctrine.

¶ 20      The plain-error rule bypasses normal forfeiture principles and permits reviewing courts to consider unpreserved error in certain circumstances. *People v. Averett*, 237 Ill. 2d 1, 18 (2010). A reviewing court may consider unpreserved error under the plain-error doctrine when the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step in conducting plain-error review is to determine whether error occurred at all. *People v. Walker*, 232 Ill. 2d 113, 124 (2009).

¶ 21      Evidence of a defendant's gang membership may be admitted if there is sufficient proof that it is related to the crime charged and is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. *People v. Johnson*, 208 Ill. 2d 53, 102 (2003). One purpose for which such evidence may be admissible is "to provide a motive for an otherwise inexplicable act." *People v. Smith*, 141 Ill. 2d 40, 58 (1990).

¶ 22      Defendant maintains that the evidence of his gang membership presented at trial was insufficient to warrant its admission, citing *People v. Williams*, 262 Ill. App. 3d 808, 820 (1994), in which this court stated that the State could prove a defendant's gang membership through his own admission, evidence that he shouted a gang slogan before committing a crime, or expert testimony from a police officer specializing in gang crimes. The court also stated that "[t]he bare assertion of a lay witness regarding gang membership *** is not adequate" to establish a defendant's gang membership, citing to *People v. Lucas*, 151 Ill. 2d 461, 479 (1992). *Williams*, 262 Ill. App. 3d at 820.

¶ 23      In *Lucas*, 151 Ill. 2d at 479-80, our supreme court distinguished that case from its recent decision in *People v. Easley*, 148 Ill. 2d 281 (1992), determining that unlike in *Easley*, where the gang evidence was irrelevant because the State had failed to prove its conspiracy theory, the State had presented evidence linking the defendant to a gang conspiracy and showing that he attended a meeting at which the conspiracy was discussed. In *Easley*, 148 Ill. 2d at 326-29, the State's theory at trial was that the defendant had committed murder as part of a planned retaliation for the death of a fellow gang member, and the court held that the evidence of his membership in a gang was inadmissible because it was irrelevant where the State had not established that a gang conspiracy existed or that he was aware of such a conspiracy.

¶ 24      Thus, our supreme court did not hold that the testimony of a lay witness regarding a defendant's gang membership was insufficient to prove that fact in either *Lucas* or *Easley*, but instead applied the established standard regarding such evidence by considering whether

the evidence was related to the crime charged and relevant to an issue in dispute and weighing its probative value against its prejudicial effect (see *Smith*, 141 Ill. 2d at 58). As such, we decline to adopt the additional requirement regarding the admissibility of gang membership evidence set forth in *Williams*, and we will instead apply that standard set forth and followed by our supreme court to determine whether the evidence of defendant's gang membership was admissible in this case.

¶ 25　　At trial, the State presented evidence showing that defendant and Perry were members of the Gangster Disciples and that Jamison, Roundtree, and Walton were members of the Black P. Stones, a rival gang. The evidence also showed that prior to the shootings, Jamison confronted defendant and Perry at a gas station located in Black P. Stone territory regarding their presence there and entered into a verbal altercation with defendant. The evidence further showed that shortly after leaving the gas station, Jamison, Roundtree, Walton, and Gill were shot at by someone from Perry's vehicle while in an alley behind Roundtree's house and that defendant then chased Jamison, Roundtree, and Walton in his car and fired multiple shots at them after they had crashed into a pole. The State argued to the jury during closing that defendant had decided to pursue the victims and fire multiple gunshots at them because they had disrespected him earlier that night at the gas station, which was located in territory controlled by the victims' gang.

¶ 26　　Thus, the evidence of defendant's gang membership provided an explanation for Jamison's otherwise inexplicable act of confronting defendant and Perry at the gas station and was related to the crimes charged and relevant to defendant's motive for shooting at Jamison's car where the State's theory at trial was that he did so because he felt he was disrespected at the gas station. In addition, the probative value of the gang evidence was not substantially outweighed by its prejudicial effect on defendant where the evidence was essential to proving the State's case and its prejudicial effect was somewhat offset by the accompanying diminution of the credibility of Roundtree and Walton due to their membership in a rival gang. We therefore conclude that the trial court did not err by admitting evidence showing that defendant was a member of a gang and that the plain-error rule does not apply to excuse defendant's procedural default of this issue in this case.

¶ 27　　　　　　　　　　　　　　　　B. *Voir Dire*

¶ 28　　Defendant next asserts that the trial court erred by failing to ask the prospective jurors during *voir dire* whether they could be fair and impartial in light of evidence of his membership in a gang. The State responds that defendant has forfeited this issue by failing to object to the court's actions or request such questioning during *voir dire* and by failing to raise this issue in his posttrial motion for a new trial. Defendant replies that the court was required to question the prospective jurors *sua sponte* regarding evidence of his gang membership because such evidence was central to the State's case.

¶ 29　　We conclude that defendant has forfeited this issue by failing to raise it in his posttrial motion for a new trial. *Baez*, 241 Ill. 2d at 129. In addition, we note that no Illinois court has ever held that a trial court has a *sua sponte* duty to ask prospective jurors gang bias questions during *voir dire*. *People v. Macias*, 371 Ill. App. 3d 632, 640 (2007). Further, although

-7-

defendant briefly discusses in his reply this court's decision in *People v. Gardner*, 348 Ill. App. 3d 479, 489 (2004), in which we held that this issue could be considered under the plain-error rule if the defendant had failed to object to the court's conduct during *voir dire*, at no point in his brief or reply has he asserted that the plain-error rule is applicable to excuse his default of this issue in this case.

¶ 30                                    C. Limiting Instruction

¶ 31    Defendant next asserts that he was denied a fair trial where the trial court erred by failing to provide the jury with an instruction directing that the evidence of his gang membership could only be considered for a limited purpose. The State responds that any error was harmless where the limiting instruction would not concern the elements of the crimes charged, the presumption of innocence, or the burden of proof and the evidence was not closely balanced.

¶ 32    To establish that a trial court's error is harmless, the State must prove beyond a reasonable doubt that the result of the trial would have been the same absent the error. *People v. Nitz*, 219 Ill. 2d 400, 410 (2006). In *People v. Jackson*, 357 Ill. App. 3d 313, 321 (2005), this court determined that the trial court erred by failing to instruct the jury pursuant to Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) that evidence of the defendant's gang membership could only be considered for the limited purpose of showing his identification, presence, intent, motive, design, or knowledge. We then held that the error was harmless because the limiting instruction did not concern the elements of the crime charged, the presumption of innocence, or the burden of proof and the evidence was not closely balanced. *Id.*

¶ 33    In this case, defendant is claiming that the trial court erred by failing to provide the jury with a limiting instruction regarding the evidence of his gang membership. Such an instruction would not have concerned the elements of the crimes charged, the presumption of innocence, or the burden of proof. In addition, Roundtree and Walton testified consistently with one another regarding the events that took place on the night of the shooting, and their testimony was not contradicted by any other evidence at trial. We therefore conclude that any error committed by the trial court in failing to provide the jury with a limiting instruction regarding the evidence of defendant's gang membership was harmless.

¶ 34                              D. Ineffective Assistance of Counsel

¶ 35    Defendant also asserts that he was denied his right to the effective assistance of counsel where counsel failed to request a special jury instruction on gang evidence. To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a defendant's claim of ineffective assistance of counsel. *People v. Palmer*, 162 Ill. 2d 465, 475 (1994). Thus, if a claim can be disposed of for failing to satisfy the prejudice prong, the court need not also determine whether counsel's performance was deficient.

*People v. Graham*, 206 Ill. 2d 465, 476 (2003). To establish prejudice, the defendant must prove there is a reasonable probability that the result of the trial would have been different but for counsel's deficient performance. *People v. Simms*, 192 Ill. 2d 349, 362 (2000). Having already determined that the trial court's failure to provide the jury with an instruction regarding the limited use of gang membership evidence was harmless, we thus conclude that defendant has not satisfied the prejudice prong of the *Strickland* test and that he therefore was not denied the effective assistance of counsel.

¶ 36                                   II. Prosecutorial Misconduct

¶ 37    Defendant next contends that he was denied a fair trial because the prosecutor made improper comments during rebuttal argument. The State responds that the challenged remarks were not improper because they were invited by defense counsel's closing argument and that even if they were improper, defendant was not prejudiced where the trial court sustained the objections to those comments and the evidence of his guilt was overwhelming.

¶ 38    A prosecutor is afforded wide latitude in making closing and rebuttal arguments. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009). In reviewing a prosecutor's challenged comments, this court will consider the closing and rebuttal arguments as a whole and "will find reversible error only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." *People v. Runge*, 234 Ill. 2d 68, 142 (2009). The question of whether a prosecutor's statement is so egregious that it warrants a new trial is a legal issue, which this court will review *de novo*. *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007).

¶ 39    In this case, the prosecutor's rebuttal argument began as follows:

    "[THE PROSECUTOR]: Thank you, Judge. Proof beyond a reasonable doubt, it's a burden we welcome. It's a burden we embrace. We wouldn't be here today if we didn't believe we had proof beyond a reasonable doubt–

    [DEFENSE COUNSEL]: Objection, your Honor. What they believe is irrelevant.

    THE COURT: The objection is sustained.

    [THE PROSECUTOR]: We wouldn't be here today if there wasn't enough evidence to prove this man guilty of first degree murder and attempt first degree murder.

    [DEFENSE COUNSEL]: Objection, your Honor. That's her opinion.

    THE COURT: Ladies and gentlemen, please disregard any opinions that are offered by any either side here. The opinions or personal beliefs of the lawyers are not evidence and should not be considered by you in any way."

¶ 40    The State maintains that the challenged comments were not improper because they were invited by defense counsel's remarks during closing argument that the State had not proved defendant guilty beyond a reasonable doubt. While a prosecutor may respond to comments by defense counsel which clearly invite a response, she must refrain from making improper or prejudicial comments. *People v. Hudson*, 157 Ill. 2d 401, 441 (1993). A prosecutor may not express her personal opinion of the strength of the State's case or the defendant's guilt, but may state an opinion which is based on the record or a legitimate inference derived from

the record. *People v. Brown*, 253 Ill. App. 3d 165, 176 (1993).

¶ 41    Here, the prosecutor expressed her personal opinion regarding defendant's guilt and the strength of the State's case where she twice stated that the State would not have brought its case against defendant unless it had enough evidence to prove him guilty beyond a reasonable doubt. Defendant argues that the challenged comments were not based on the record or a legitimate inference derived from the record as the prosecutor did not make reference to any evidence presented at trial in either of her remarks, but instead provided her opinion regarding the level of the State's confidence in its case. We note that the challenged comments were the first two sentences spoken by the prosecutor in her rebuttal argument. Consequently, there was no opportunity for the prosecutor to even reach the facts in the record. However, the prosecutor's challenged comments made during rebuttal argument were arguably improper.

¶ 42    The State also maintains that the prosecutor's remarks do not warrant a new trial where the trial court sustained defense counsel's objections to the comments and admonished the jury to disregard any opinions or personal beliefs expressed by the attorneys during arguments. A trial court may usually cure any prejudice arising from improper argument by promptly sustaining an objection to the challenged comment and giving a proper jury instruction. *People v. Johnson*, 208 Ill. 2d at 116. In this case, the court promptly sustained defense counsel's objections to the prosecutor's improper remarks and instructed the jury that any opinions or personal beliefs offered by the lawyers were not evidence and should be disregarded. Although the prosecutor basically repeated her initial improper comment immediately after the court sustained defense counsel's first objection, the court promptly sustained defense counsel's second objection and instructed the jury to disregard the prosecutor's improper remarks. The prosecutor did not make any further improper comments regarding the strength of the State's case during the remainder of rebuttal argument. As such, we determine that the trial court cured the prejudice arising from the prosecutor's improper comments and conclude that those remarks do not warrant a new trial.

¶ 43                                III. Jury Instructions

¶ 44    Defendant also contends that the trial court erred by refusing to provide the jury with a modified version of IPI Criminal 4th No. 3.11 prepared by defense counsel or an instruction for second degree murder. Jury instructions are intended to provide the jury with accurate legal principles to apply to the evidence so it can reach a correct verdict. *People v. Pierce*, 226 Ill. 2d 470, 475 (2007). The decision of whether to tender a particular instruction lies with the trial court and is reviewed under an abuse of discretion standard. *People v. Mohr*, 228 Ill. 2d 53, 65-66 (2008). A trial court abuses its discretion when the instructions are unclear, mislead the jury, or are not justified by the evidence and the law. *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009).

¶ 45                        A. Modified IPI Criminal 4th No. 3.11

¶ 46    At the jury instructions conference in this case, the trial court proposed to provide the jury with IPI Criminal 4th No. 3.11, which instructs:

"The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom."

Defense counsel objected to that instruction, asserting that it did not adequately instruct the jury regarding the impeachment of a witness based on an omission in a prior statement and suggested that the jury instead be provided with a modified version of that instruction relating that:

"The believability of the witness may be challenged by evidence that on some former occasion he failed to make a statement when he had the opportunity. Evidence of this kind may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom."

The court then decided to provide the jury with IPI Criminal 4th No. 3.11 over defense counsel's objection, stating that the law favored the giving of pattern instructions and that IPI Criminal 4th No. 3.11 allowed defense counsel to argue to the jury that Roundtree and Walton should not be believed because they did not mention the shooting in the alley behind Roundtree's house in their statements to the police.

¶ 47    IPI Criminal 4th No. 3.11 instructs that the believability of a witness may be challenged by evidence of a prior inconsistent statement and therefore covers inconsistencies caused by both omissions and affirmative statements in the prior statement. *People v. Eggert*, 324 Ill. App. 3d 79, 82-83 (2001). Thus, we conclude that the trial court did not abuse its discretion by tendering IPI Criminal 4th No. 3.11 to the jury where that instruction accurately reflects the law regarding the use and effect of a prior inconsistent statement on a witness's testimony.

¶ 48                              B. Second Degree Murder

¶ 49    Defendant asserts that the trial court abused its discretion by failing to provide the jury with an instruction on second degree murder based on his sudden and intense passion. A defendant is entitled to a jury instruction on any defense theory for which there is at least slight evidence in the record. *People v. Davis*, 213 Ill. 2d 459, 478 (2004). A person is guilty of second degree murder when he commits first degree murder and is acting under a sudden and intense passion resulting from serious provocation when he does so. 720 ILCS 5/9-2(a)(1) (West 2004). "Serious provocation" is "conduct sufficient to excite an intense passion in a reasonable person." 720 ILCS 5/9-2(b) (West 2004). The only categories of serious provocation that have been recognized by our supreme court are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. *People v. Sipp*, 378 Ill. App. 3d 157, 166 (2007). Mere words and gestures are insufficient to constitute serious provocation. *People v. Blackwell*, 171 Ill. 2d 338, 358 (1996).

¶ 50    The record shows that defense counsel requested a jury instruction for second degree murder and that the court denied that request. In doing so, the court stated that there was no evidence that Jamison was in possession of a weapon during the altercation at the gas station, that defendant's car was struck by the baseball bat thrown by Jamison, that defendant was

aware Jamison had thrown the bat, or that any of the victims were armed on the night of the shooting. The court also noted that the evidence showed that the shooting took place seven to nine minutes after the altercation at the gas station. Based on these considerations, we determine that there was no evidence that defendant was acting under a sudden and intense passion resulting from serious provocation when he fired multiple shots at Jamison's vehicle and conclude that the court did not abuse its discretion by refusing to provide the jury with an instruction on second degree murder.

¶ 51                                    IV. Additional Issues

¶ 52        Defendant further contends that the trial court erred in making a number of rulings during defense counsel's opening statement, cross-examination of Roundtree and Walton, and closing argument.

¶ 53                                    A. Opening statement

¶ 54        Defendant asserts that the trial court erred when it sustained the prosecutor's objection to defense counsel's comment to the jury during the opening statement that "in evaluating this case, you will also look and see there was no statement from the Defendant that he shot and killed anybody." Initially, defendant has waived this issue by failing to cite to any supporting authority in his brief. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 109 (2009). Moreover, the trial court has great discretion in defining the allowable scope of opening statements, and a defendant must show that he was harmed by the court's decision to establish an abuse of that discretion and that the court's decision was a material factor in his conviction to establish that it is reversible error. *People v. Lee*, 342 Ill. App. 3d 37, 50 (2003). In this case, there is nothing in the record to suggest that the court's challenged ruling during opening statement was a material factor in defendant's conviction.

¶ 55                                    B. Cross-examination

¶ 56        Defendant also asserts that the trial court erred when it sustained the State's objections to questions asked by defense counsel during the cross-examinations of Roundtree and Walton. A criminal defendant has a constitutional right to confront the witnesses against him. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. This right includes a reasonable right of cross-examination into a witness's bias, interest, or motive to testify falsely. *People v. Nelson*, 235 Ill. 2d 386, 420-21 (2009). Rulings concerning the scope of cross-examination are within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion resulting in manifest prejudice to the defendant. *People v. Williams*, 161 Ill. 2d 1, 43 (1994). "Further, the trial court enjoys wide latitude in limiting the cross-examination of a witness to prevent repetitive or minimally relevant questioning, harassment, prejudice, or confusion of the issues." *People v. Britt*, 265 Ill. App. 3d 129, 146 (1994).

### 1. Roundtree

The record shows that Roundtree stated during cross-examination that he told the truth exactly how he saw it and that defense counsel then asked him "you never lied, have you?" The prosecutor objected to defense counsel's question, and that objection was sustained by the court. At best, defendant's question was minimally relevant to the issue of Roundtree's credibility, and defendant has made no showing that he was prejudiced by the court's ruling in any way. We thus determine that the court did not abuse its discretion by sustaining the prosecutor's objection to defense counsel's cross-examination of Roundtree.

### 2. Walton

The record also shows that defense counsel asked Walton during cross-examination if the State had ever asked him about how to contact his brother. The prosecutor objected to defense counsel's question, and the court sustained the objection. Although defendant maintains that the court erred by sustaining the objection because the question was relevant to the issue of whether the police had conducted an adequate investigation of the shooting, he makes no assertions as to how he was prejudiced by that ruling and we therefore determine that the court did not abuse its discretion by sustaining the State's objection.

### C. Closing argument

Defendant further asserts that the court erred when it sustained the State's objection to a statement made by defense counsel during closing argument. The regulation of closing argument lies within the discretion of the trial court, and its rulings regarding the propriety of comments made in closing will not be disturbed absent an abuse of that discretion. *People v. Caffey*, 205 Ill. 2d 52, 128 (2001). The record shows that during closing argument, defense counsel remarked that "you have a right to presume that they didn't bring in these officers because they talked to all the officers. Officers are available to the State and officers did not confirm–" at which point the prosecutor objected and the court sustained that objection. Defendant has waived this issue by failing to cite to any supporting authority in his brief. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); *Hirsch*, 397 Ill. App. 3d at 109. In addition, defendant has provided no explanation as to how he was prejudiced by the court's ruling.

### CONCLUSION

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.