(No. 51818.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. MITCHELL KELLOGG, Appellee.

*Opinion filed November 21, 1979.*

526

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Marcia B. Orr, Mary Ellen Dienes and Thomas L. Brucker, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (John F. Westley and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant, Mitchell Kellogg, was convicted of armed robbery and sentenced to a period of 4 to 8 years in the penitentiary. The sole question on review is whether the response of a juror, during the polling of the jury, cast doubt on the unanimity of the verdict. The appellate court reversed the trial court and found that the court's questioning of one juror deprived her of an opportunity to dissent. (68 Ill. App. 3d 456.) This court granted leave to appeal. 65 Ill. 2d R. 315.

A guilty verdict signed by all the jurors was returned by the jury. After the verdict was read, the jury was polled. Each juror was asked, "Was this then and is this now your verdict?" Eleven jurors replied in the affirmative. The following colloquy occurred between the court and the remaining juror:

"THE CLERK: Susan M. Vesecky, was this then and is this now your verdict?

JUROR VESECKY: Yes. Can I change my vote?

THE COURT: The question is, was this then and is this now your verdict?

JUROR VESECKY: (No response.)

THE COURT: Was this then and is this now your verdict?

JUROR VESECKY: Yes, Sir."

In *People v. Preston* (1979), 76 Ill. 2d 274, this court referred to the appellate court's holding in the present case and distinguished the opportunity the juror in this case had to voice a dissent from that which this court approved in *Preston*. We now affirm the judgment of the appellate court.

When a jury is polled, each juror should be questioned

individually as to whether the announced verdict is his own. The poll should be conducted so as to obtain an unequivocal expression from each juror. (ABA Standards, Trial by Jury, sec. 5.5 (1968).) The very purpose of the formality of polling is to afford the juror, before the verdict is recorded, an opportunity for "free expression unhampered by the fears or the errors which may have attended the private proceedings" of the jury room. (8 Wigmore, Evidence sec. 2355, at 717 (rev. ed. 1961).) In conducting the poll, each juror should be examined to make sure that he truly assents to the verdict. See Annot., 25 A.L.R.3d 1151 (1969).

The trial court may use its discretion in selecting the specific form of question to be asked in the polling process as long as a juror is given the opportunity to dissent. The double-barreled question used in this case, "Was this then and is this now your verdict?" has often been used in Illinois. (See *People ex rel. Lane v. Pate* (1968), 39 Ill. 2d 115.) We see nothing wrong with using this question in polling the jury. However, if a juror indicates some hesitancy or ambivalence in his answer, then it is the trial judge's duty to ascertain the juror's present intent by affording the juror the opportunity to make an unambiguous reply as to his present state of mind. (*People v. Preston* (1979), 76 Ill. 2d 274.) Jurors must be able to express disagreement during the poll or else the polling process would be a farce and the jurors would be bound by their signatures on the verdict. Before the final verdict is recorded, a juror has the right to inform the court that a mistake has been made, or to ask that the jury be permitted to reconsider its verdict, or to express disagreement with the verdict returned. If the trial judge determines that any juror does dissent from the verdict submitted to the court, then the proper remedy is for the trial court, on its own motion if necessary, to either direct the jury to retire for further deliberations (*Martin v.*

*Morelock* (1863), 32 Ill. 485), or to discharge it (ABA Standards, Trial by Jury sec. 5.5 (1968)).

In attempting to determine the juror's present intent during the poll, the trial court judge must be careful not to make the polling process another arena for deliberations. However, an opportunity must be afforded for the juror to express his opinion free from coercive influences that may have dominated the deliberations of the jury room. It is a matter for the trial judge to determine whether a juror has freely assented to the verdict. The trial judge not only hears the juror's response, but he can observe the juror's demeanor and tone of voice. (*People v. Superior Court* (1967), 67 Cal. 2d 929, 434 P.2d 623, 64 Cal. Rptr. 327; *Commonwealth ex rel. Ryan v. Banmiller* (1960), 400 Pa. 326, 162 A.2d 354.) However, the trial judge's determination is subject to review, and a verdict cannot stand if the interrogation precludes the opportunity to dissent or if the record reflects that the juror in the poll has not in fact assented to the verdict.

In conducting the poll, the judge must keep in mind that the " 'influence of the trial judge on the jury is necessarily and properly of great weight' " and that "jurors are ever watchful of the words that fall from him." (*Bollenbach v. United States* (1946), 326 U.S. 607, 612, 90 L. Ed. 350, 354, 66 S. Ct. 402, 405.) Thus the judge, in posing questions to a juror during the poll, must carefully avoid the possibility of influencing or coercing the juror. In the case at bar, Susan Vesecky was the youngest juror, 21 years old. When asked by the clerk, "Was this then and is this now your verdict?" she stated yes, but then asked the court if she could change her mind. The judge did not answer her question, but rather repeated the prior question twice to her until she gave an affirmative answer.

It is difficult to assess the impact of the judge's interrogation, his refusal to address himself to the question the juror asked—"Can I change my vote?"—and the

double-barreled question which he insisted be answered. Although we cannot say from the record that the juror was coerced, we also cannot say that the conduct of the judge—a man in a position of authority, who was many years the juror's senior—would not compel the "Yes, Sir" response. This answer was given to a question that referred to the juror's state of mind in the jury room when she signed the verdict, as well as to her state of mind when the poll was being conducted after she would have been freed from the influences of the jury-room environment. When her ambiguous response as to her present assent to the verdict was given, the court should have focused on her feeling as to the verdict returned. This he did not do and we cannot ascertain from her answer whether or not she adhered to the verdict she had signed. Absent some response that raises a question as to the juror's present intent, such a dual question is appropriate; however, the response "Can I change my vote?" indicates that the juror had some reluctance to abide by the verdict. This was more than a rhetorical question. The response she gave after the judge twice repeated the same question was not different from the response she had previously given. However, the judge did not ascertain if it was her desire to change her vote as she had asked, or whether she desired to abide by the verdict she had signed. The record does not therefore reflect that the verdict of guilty was a unanimous verdict.

In this case defense counsel made no objection to the court's interrogation of the juror prior to the entry of judgment. The question was raised by the defendant in his post-trial motion. Had the objection been made before the jury was discharged, the court might have been able to correct its mistake by asking appropriate questions, or by sending the jury back to the jury room for further deliberations. Counsel's failure to make a timely objection has necessitated a review by the appellate court, a review

by this court, and a new trial in the trial court, all of which might have been avoided. We view this as a needless waste of judicial time. However, since the failure to object has not been raised by the State in this court, we need not consider this matter beyond the observations just voiced.

For the reasons given above, the judgment of the appellate court is affirmed.

*Judgment affirmed.*