THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES SMITH, Defendant-Appellant.

Second District    No. 2—93—1167

Opinion filed April 13, 1995.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

Defendant, Charles Smith, was convicted of robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—1(a) (now 720 ILCS 5/18—1(a) (West Supp. 1993))) and sentenced to 10 years' imprisonment. On appeal, he requests that his conviction be reversed and the cause remanded for a new trial because the verdict was not unanimous.

The State adduced the following facts at trial. A man entered a fast-food restaurant by throwing a cement block through the glass door after the dining room was closed. The robber grabbed the female employee and forced her to open the safe. He took bank bags of money and cash from several tills. He then forced the employee to give him the money from the drive-through cash register. Before the robber left the premises, the male employee called the police. The robber fled the scene on foot. The two victims of the robbery identified defen-

dant as the robber following his apprehension that evening and in court at the trial.

In addition, a police officer, who was responding to the call, saw a person who fit the description of the robber running from the area. The officer identified that man as defendant. The officer saw defendant get into the passenger side of a car which was registered to defendant. The officer followed the car and activated the squad car's emergency lights, but the car refused to stop. The officer chased the car to a dead end, where the driver and defendant fled the vehicle. The officer chased the men on foot through a drainage ditch, but was able to catch only the driver. Another officer saw defendant running from the other side of the drainage ditch and chased him into some backyards. When defendant was apprehended, he was not wearing any shoes, and he had a large amount of cash in $1 bills in his pocket. The officer who originally spotted defendant identified him after he was in custody. One of defendant's shoes was found by the car, the other in the drainage ditch. Cash was found in the car and scattered along the trail of the chase. The police also found two bank bags taken from the restaurant hidden in some brush near the drainage ditch.

The jury retired around 4 p.m. and returned with a verdict after 8 p.m. During the polling of the jury, the following colloquy occurred:

> "THE COURT: Mrs. Sims, was this and is this still your verdict?
> THE JUROR: No, Your Honor.
> THE COURT: This is not your verdict?
> THE JUROR: No.
> THE COURT: You did not vote guilty?
> THE JUROR: I voted guilty, but it's not what I wanted to do."

The court then asked counsel what to do about the situation. Defense counsel moved for a mistrial, while the prosecutor suggested that the jury be sent back to continue to deliberate. The court polled the rest of the jurors, all of whom affirmed the verdict except for Mr. Poyer, who responded, "It's my verdict, but I am not happy with it at all." The court then told the jury to return to the jury room while the court discussed the matter with the attorneys.

After the jury left the courtroom, defense counsel asked whether there was any communication between the jury and the bailiff during the deliberations. The bailiff explained that when she brought in the dinner menus:

> "[o]ne juror said, 'What happens if we arrive at a hung jury?' And at that time, I said to them, 'Well, that's entirely up to the Judge, however, it would probably be after longer deliberations than you have done already.' "

The bailiff had immediately reported this to the trial court. Defense counsel again moved for a mistrial, and the court and counsel left the courtroom to get authority on the subject.

The parties returned to the courtroom, and the jury was brought back in. Defense counsel began discussing a case, and the prosecutor asked for a sidebar. Following the sidebar, this exchange occurred:

"THE COURT: If we are going to get involved in extensive argument it would to [*sic*] be outside of the jury.

Mr. Foreman, has the jury done any further deliberations[?]

THE FOREMAN: A little bit. I don't know. You might want to pole [*sic*] us again.

THE COURT: Do the parties wish the jury to be polled again[?]

MS. CAHILL [Defense counsel]: I am objecting to that procedure again until there has been a ruling on the motion before the Court, with all due respect.

THE COURT: Mrs. Sims, if I ask you the same question, whether or not the guilty verdict was and still is in fact your verdict, what is your answer now[?]

THE JUROR: Guilty, Your Honor.

THE COURT: Mr. Pryor [*sic*], if I ask you whether or not the guilty verdict was and still is your verdict, what's your answer now?

THE JUROR: My verdict before was guilty. I just didn't like the presentation of evidence. ***
***

THE COURT: All right. Thank you for that, both of you. Well, I'll confer with counsel outside the presence of the jury, but as of this moment, I accept the jury's verdict, and I discharge the jury."

After the jury was excused, defense counsel stated on the record her perceptions of juror Sims' demeanor as she was polled the second time. According to defense counsel, Sims hesitated when the court asked again for her verdict. Sims looked down and appeared to be uncomfortable. Neither the prosecutor nor the court disagreed with this characterization. The court declined to rule on the motion for a mistrial at that time.

At the following hearing, defense counsel filed a written motion for a mistrial. Counsel argued that the bailiff's communication with the jury and juror Sims' repudiation of the verdict required a mistrial. In particular, counsel asserted that when juror Sims returned to the courtroom, her statement of guilty did not reflect her true intent so that there was not a unanimous verdict. The court denied the motion for a mistrial, finding that the communication between the bailiff and the jury was not prejudicial. The court also found that juror Sims voted guilty twice.

Defendant then filed a motion for a new trial incorporating the motion for a mistrial. In denying this motion, the court explained:

"Again, I thought when I got finished with this trial that I had heard one juror express a no as a not guilty in between having voted twice guilty.

If the evidence were weak, I might have reached a different conclusion. But I have to agree with the State, that the evidence I heard is very strong. And I believe in large part for that reason it's proper to accept the jury's verdict and enter a judgment of conviction."

Following the imposition of the sentence, defendant timely appealed.

Defendant contends that he is entitled to a new trial because the verdict was not unanimous.

" ' "The polling of a jury is intended 'to ascertain whether any juror had been coerced into agreeing upon a verdict—coerced by his associate jurors.' [Citation.] While polling the jury, a trial court must be careful not to hinder a juror's expression of dissent." [Citation.]' (*People v. Williams* (1983), 97 Ill. 2d 252, 307.) The trial judge, in determining whether a juror has freely assented to the verdict, not only hears the juror's response, but observes the juror's demeanor and tone of voice during the course of the polling of the jury. [Citations.] A trial court's determination as to a juror's voluntariness of his assent to the verdict will not be set aside unless the trial court's conclusion is clearly unreasonable." *People v. Cabrera* (1987), 116 Ill. 2d 474, 490.

■ When, as here, a juror dissents from the verdict, "[T]he proper remedy is for the trial court *** to either direct the jury to retire for further deliberations [citation], or to discharge it." (*People v. Kellogg* (1979), 77 Ill. 2d 524, 528-29.) Here, however, the trial court did neither. The jury was not instructed to continue to deliberate; it did not return with a new verdict. Defendant objected to polling the jury again before the court ruled on the motion for a mistrial. In addition, the trial court did not poll the jury; it merely reexamined the two jurors. (See *People v. Chandler* (1980), 88 Ill. App. 3d 644, 650 (the polling of the jury requires that the entire jury be polled).) While it is for the trial judge to determine whether a juror has freely assented to the verdict, "a verdict cannot stand if the interrogation precludes the opportunity to dissent or if the record reflects that the juror in the poll has not in fact assented to the verdict." *Kellogg*, 77 Ill. 2d at 529.

■ Defendant asserts that juror Sims was not afforded an opportunity to dissent when the jury was returned to the courtroom. We agree. The trial judge failed to follow up on Sims' answer and instead questioned the other juror who had not dissented from the

verdict. This is significant because Sims' demeanor raised a question regarding whether she freely changed her vote. Moreover, the court's failure to poll the entire jury may have had a coercive effect on juror Sims. The foreman of the jury was equivocal when asked whether the jury had deliberated further. The jury was returned to the courtroom; it did not choose to return at that time. Sims unequivocally dissented from the verdict during the polling of the jury, although she was not allowed to explain why she signed the verdict form. The juror's question to the bailiff about a hung jury raises the possibility that the jurors may have pressured Sims to change her verdict. We note that the guilty verdict form was signed in black ink by 11 jurors. The last signature belonged to Sims, and it was signed in blue ink. This implies that the jury was split 11 to 1. These circumstances suggest that Sims was coerced into changing her vote, and the trial court should have questioned her further to ascertain her intent.

It is clear that the trial court erred in failing to instruct the jury to continue deliberating or to discharge the jury. There is no authority to support the trial court's decision that, because the evidence of guilt was strong, the court could accept the verdict when it was not clear that the verdict was unanimous.

We therefore conclude that the court's acceptance of the verdict was unreasonable and defendant is entitled to a new trial.

The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

GEIGER and RATHJE, JJ., concur.