# Illinois Official Reports

## Appellate Court

*People v. Manning*, 2017 IL App (2d) 140930

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARTHUR MANNING, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-0930 |
| Filed | March 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 08-CF-2729; the Hon. Susan Clancy Boles, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Thomas A. Lilien and Paul Alexander Rogers, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justices McLaren and Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a second jury trial, defendant, Arthur Manning, was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and sentenced to 25 years in prison. He timely appealed and now argues that "[t]he trial court reversibly erred where it: (a) failed to give a direct answer when the jury asked if non-unanimity regarding the mitigating factor meant that the charge would 'revert' from second degree murder to first degree murder; and (b) refused to poll the jury specifically to determine if any juror believed that a mitigating factor existed." For the reasons that follow, we reverse and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3    In 2008, defendant was indicted on three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2008)), based on the stabbing death of Naromi Mannery. Following a jury trial, defendant was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and sentenced to 29 years in prison. Defendant appealed. We reversed and remanded for a new trial, finding that the trial court abused its discretion in refusing to instruct the jury on self-defense. *People v. Manning*, No. 2-09-0752 (2011) (unpublished order under Supreme Court Rule 23).

¶ 4    The evidence at defendant's second jury trial generally established the following. Defendant worked for Windy City Amusements (Windy City) and lived with other Windy City employees in a house owned by Windy City. Windy City had a no-guest policy; only Windy City employees were allowed on the premises. On the evening of the incident, Mannery, who did not live at the house, refused to leave the premises. Defendant, along with three other residents—Darren Barnett, Guy Manning (defendant's brother), and Willie Wimberly—approached Mannery. One of the residents asked Mannery to leave. A fight ensued, during which Mannery suffered a fatal stab wound to his chest. An autopsy revealed a blunt laceration to his forehead and three injuries that appeared to be caused by a single-edged serrated knife: one to his right bicep, one to his back, and one to the middle of his chest.

¶ 5    Barnett testified that Wimberly threw the first punch and struck Mannery. Mannery then charged Guy, who sidestepped Mannery and then hit Mannery on the back with a folded lawn chair. Mannery and defendant then charged each other simultaneously. Philip David Lehrfeld, a resident of the Windy City house, testified that Wimberly threw a punch at Mannery and that defendant and Guy also started fighting with Mannery. Lehrfeld stated that the fight was over quickly. Richard Rusin, a resident of the Windy City house, testified that the fight lasted no more than two minutes. He saw Guy hit Mannery with the chair, and he saw defendant punch Mannery. He did not see Mannery do anything during the altercation.

¶ 6    Defendant was interviewed and, although he initially denied fighting with Mannery, he admitted, after being told that others had implicated him, that he fought with Mannery and stabbed him with a small pocket knife that he had obtained from Guy. Defendant stated that Mannery refused to leave the premises, called defendant a "bitch ass," and punched defendant in the face. Defendant recalled stabbing Mannery only in the arm and in the back. Defendant showed the police where they could find the knife in the Windy City house.

¶ 7    At defendant's request, the trial court instructed the jury on self-defense. The trial court also granted defendant's request to instruct the jury on second degree murder, based on both statutory mitigating factors: an unreasonable belief in the need for self-defense and provocation with mutual combat being the requisite provocation. See 720 ILCS 5/9-2(a) (West 2008). Thus, the jury received instructions that are given when both first degree murder and second degree murder are at issue, namely Illinois Pattern Jury Instructions, Criminal, Nos. 7.06B and 26.01A (4th ed. 2000) (hereinafter, IPI Criminal 4th). In keeping with the second degree murder statute, IPI Criminal 4th No. 7.06B listed the elements of first degree murder and indicated that the State had to prove each element beyond a reasonable doubt. The same instruction told the jury: (1) if it found that the State had failed to prove each first degree murder element beyond a reasonable doubt, it should stop deliberating and return a verdict of not guilty; (2) if it found that the State had proven each of those elements beyond a reasonable doubt, it should then decide whether defendant had proven that a mitigating factor existed; (3) if it found that defendant had met that burden, it should find him guilty of second degree murder; but (4) if it found that defendant had failed to meet that burden, it should find him guilty of first degree murder. IPI Criminal 4th No. 26.01A instructed the jury that it would receive three verdict forms ((1) not guilty, (2) guilty of first degree murder, and (3) guilty of second degree murder), that its verdict must be unanimous, and that it should sign only one verdict form.

¶ 8    During the course of deliberations, the following occurred:

"THE COURT: *** We received a question from the jury: For approving mitigating factors to reduce charge to second degree murder, if vote on mitigating factor is not unanimous, does it revert to first degree murder?

Okay. Proposed responses?

[THE STATE]: Yes.

[DEFENSE COUNSEL]: My response would be no, Judge.

THE COURT: Okay. I will listen to respective—

[THE STATE]: The answer is yes and it's not no. I mean if—if they're unanimous, 12 to nothing for first degree murder, which either under a hypothetical they are or they are—and they're contemplating a second degree instruction, that has—or a charge—that has to be unanimous. If that's six to six or 11 to one, it's not found.

THE COURT: And I don't disagree with that. That's assuming and we know that that's the instructions and that they have to find first degree before they even get to the mitigating factors. I understand that. I'm not sure that an answer is just simply that that is clear enough, for lack of a better term.

[Defense counsel]?

[DEFENSE COUNSEL]: Judge, I think if they are—if we use the language that they have found guilty on first degree murder, and now that they are on the second theory, if they are not unanimous, doesn't say, all right, you six are wrong since we can't agree, or you 11 are wrong since you can't agree so it's guilty of first degree murder; that's not correct at all. So simply answering that question yes is leading the jury to believe that if one says a mitigating factor exists and 11 state a mitigating factor doesn't exist, if [*sic*] guilty of first degree, that's not true at all, Judge.

[THE STATE]: To be honest, I don't know the answer to that question. If they found 12 to nothing for first degree murder, and they contemplate second degree murder, I don't know what the answer to that question is. I think it has to be 12 to nothing to find that mitigating factor, but if we get to a point in time that they are deadlocked on that, if it's six to six, I don't think that's a hung jury, Judge. I might be wrong about that. I would have to do some research on that. But what's the hung—what are they hung on at that point in time?

THE COURT: Here's what I'm proposing responding and willing to listen to either side, simply to say: Your verdict must be unanimous. Continue deliberating.

[THE STATE]: I have no problems with that.

[DEFENSE COUNSEL]: I believe that's correct, Judge.

THE COURT: Okay. It is 1:22.

[THE STATE]: Judge, before you send that back, can we do some research, because I want to know whether—I don't know that it has to be unanimous to not find that mitigating factor.

THE COURT: But it's fair to say that this is correct, State, that in essence your verdict must be unanimous?

[THE STATE]: Well, I don't know whether the verdict on the mitigating factor—I know the verdict of a mitigating factor to find it has to be unanimous, but to not find it, I don't know that. It probably does, but I don't know that.

[DEFENSE COUNSEL]: Judge, there are two different things. I don't see how there would be any case law out there stating otherwise, that if it was 12 people found unanimously, that the first degree murder was proven, and then they went on to deliberate about the mitigating factor, and six of them decided yes, it does exist, then they're not unanimous on first degree murder or second degree murder. They're still split on what the charge is.

[THE STATE]: They're unanimous on first degree.

[DEFENSE COUNSEL]: But they are not unanimous on first degree murder because there's people who say that there is a mitigating factor that exists, so they are not unanimous on first degree murder.

THE COURT: Well, I don't think this is an incorrect statement of law and a response to this. This is not going to say to you, [State], that you can't do some research with regard to this issue, but at this point in time I am going to send this response back, and obviously we will figure out and hopefully have more clarity. If you wish to do that research, that's fine, but right now what it's going to say is: Your verdict must be unanimous. Please continue your deliberations.

[THE STATE]: That's fine."

¶ 9    Thereafter, the jury found defendant guilty of first degree murder. After the verdict was read, the trial court asked the parties if either would like the court to poll the jury. Defense counsel responded: "I would, Judge, and I also ask to poll the jury on [*sic*] they found the mitigating factor did not exist." The clerk then asked each juror: "Was this then and is this now your verdict?" Each juror responded, "Yes." Thereafter, defense counsel stated: "I would like the specific question, if they found the mitigating factor did not exist, so—" The

court responded: "I think the sufficiency with regard to polling the jury with regard to this is sufficient. I think they answered the question."

¶ 10    Defendant filed a motion for judgment notwithstanding the verdict or for a new trial, arguing, *inter alia*, that "[t]he Court erred when it denied a defense request to poll the Jury on the issue of whether each jury member had found that a mitigating factor to reduce the charge to second degree murder existed." Following a hearing, the trial court denied defendant's motion. The court stated:

> "[T]he Court agrees with the Defense in that a Defendant who is denied an opportunity to poll the jury would be denied a substantial right; however, he was given that right and the jury was, in fact, polled. A question did come from the jury which you summarized, [defense counsel] for the record, and all—uhm—Counsel was in agreement with the response that was given to the jury—uhm—as a result of that question, which indicated that: 'Your verdicts must be unanimous, please continue your deliberations'. I don't believe that the Defendant has a right to have the jury polled as to specific factors, mitigating factors, or the like, so the Motion is going to be denied."

¶ 11    Following a sentencing hearing, the trial court sentenced defendant to 25 years in prison. Defendant timely appealed.

¶ 12                                II. ANALYSIS

¶ 13    Defendant argues that "[t]he trial court reversibly erred where it: (a) failed to give a direct answer when the jury asked if non-unanimity regarding the mitigating factor meant that the charge would 'revert' from second degree murder to first degree murder; and (b) refused to poll the jury specifically to determine if any juror believed that a mitigating factor existed." According to defendant, these errors warrant a new trial.

¶ 14    In response, the State argues that, because defendant acquiesced to the trial court's response to the jury's question, defendant cannot now complain that the trial court erred. Alternatively, the State argues that defendant forfeited the issue by failing to object to the court's response and raise the issue in his posttrial motion. The State further argues that the court did not abuse its discretion in the manner in which it polled the jury.

¶ 15    We first address the trial court's response to the jury's question. That question, again, was whether a split vote on the presence of a mitigating factor—essentially, a split vote on whether the defendant is guilty of second degree murder—"reverts" to a unanimous verdict that the defendant is guilty of first degree murder. The State initially proposed an answer of yes; defendant countered with no. Of those proposals, defendant's was right. To be sure, as indicated by IPI Criminal 4th No. 7.06B, the jury's consideration of the presence of a mitigating factor presupposes that the jury has unanimously found that the State has proven the elements of first degree murder. But a juror who goes on to vote to find the presence of a mitigating factor is voting to convict the defendant of second degree murder. Thus, if some jurors vote to find the presence of a mitigating factor, and if other jurors vote otherwise, the jury is not unanimous on the defendant's guilt of first degree murder.

¶ 16    However, in light of the parties' disagreement, the trial court proposed to instruct the jury simply that its verdict must be unanimous. Whatever the merits of that response, we agree with the State that defendant cannot challenge it. Under the invited-error doctrine, a party

cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004); *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001). "Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d at 217. Here, after the trial court proposed its response, defense counsel, without argument or objection, stated, "I believe that's correct." In light of this acquiescence, we agree that defendant cannot now challenge the trial court's response. See *People v. Raue*, 236 Ill. App. 3d 948, 951-52 (1992) (although the defendant initially proposed an answer of " 'no' " to a similar jury question, "[w]hen the judge finally proposed [his own] response, he asked both attorneys if it was satisfactory; they both agreed that it was"); see also *People v. Averett*, 237 Ill. 2d 1, 23-24 (2010) (defendant could not challenge on appeal the trial court's response to a jury question where defense counsel agreed with the trial court's response); *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 23 (defendant could not challenge on appeal the trial court's response where defense counsel "stood silent and did not object" when, after discussions, the trial court stated its proposed response); *People v. Pryor*, 372 Ill. App. 3d 422, 432-33 (2007) (defendant acquiesced when he failed to object to the trial court's proposed response).

¶ 17     Nevertheless, although defendant concedes that counsel in this case, like counsel in *Averett*, *Halerewicz*, and *Pryor*, agreed that the trial court's response was correct, he argues that, "unlike counsel in those cases, counsel here also argued that the court's response should include a more direct answer to the jury's question." The record does not support this claim. Although further discussion took place after defense counsel responded, "I believe that's correct," that discussion was initiated by the State and concerned its confusion as to whether the verdict on the absence of a mitigating factor must be unanimous. At no point during this discussion did defense counsel advocate for "a more direct answer to the jury's question" or object when the trial court restated its proposed response. See *Raue*, 236 Ill. App. 3d at 951-52.

¶ 18     Defendant also attempts to liken his acquiescence to a situation "where counsel loses an argument about whether an objection to certain evidence should be sustained." He asserts that "[a]t some point, counsel must stop arguing and at least passively accept the court's ruling, lest counsel risk being reprimanded by the court or even held in contempt." Here, however, defense counsel never objected to the trial court's proposed response or reiterated that a different response was warranted. The trial court noted as much when it denied defendant's posttrial motion. Moreover, counsel certainly did not "risk being reprimanded by the court or even held in contempt," given the trial court's explicit statement that it was "willing to listen to either side."

¶ 19     Accordingly, because any error was invited, we will not address the merits of the trial court's response. In addition, we note that the plain-error doctrine does not apply. See *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17 ("[P]lain-error review is forfeited when the defendant invites the error."). That said, however, we observe that the trial court's response did not directly address the jury's confusion. The jury's confusion was not as to whether its "verdict" must be unanimous. Its confusion was as to whether its finding that the State had proven the elements of first degree murder constituted a unanimous "verdict" of that offense, which would stand unless it reached a unanimous "verdict" of second degree murder. Thus, when the trial court instructed the jury only that its "verdict" must be unanimous, it did not

necessarily foreclose such a misguided—though still unanimous—verdict of first degree murder. Again, however, the extent to which a trial court must do so—and how best it should do so, if indeed it must—are issues that we leave for another day.

¶ 20    We turn now to the issue of whether the trial court's refusal to poll the jury to specifically determine if any juror believed that a mitigating factor existed was reversible error. Defendant argues that polling the jury as he requested would have disclosed whether the jury had unanimously determined that no mitigating factor existed. The State responds that the trial court's conduct in polling the jury properly satisfied defendant's procedural right to have the jury polled.[1] We agree with defendant.

¶ 21    A criminal defendant has an absolute right to poll the jury. *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 15. One purpose of polling the jury is to determine whether a juror's vote was the result of coercion. *People v. Kliner*, 185 Ill. 2d 81, 166 (1998). However, polling the jury is also "the primary device for uncovering the doubt or confusion of individual jurors." *Crowder v. United States*, 383 A.2d 336, 340 (D.C. 1978). The specific form of the question to be asked is subject to the trial court's discretion. *People v. Kellogg*, 77 Ill. 2d 524, 528 (1979).

¶ 22    Polling should be done in a manner that elicits an unequivocal response from each juror. *People v. Beasley*, 384 Ill. App. 3d 1039, 1048-49 (2008). Although the trial court should not turn the polling process into an opportunity for further deliberations, the court also must not hinder a juror's expression of dissent. *People v. Cabrera*, 116 Ill. 2d 474, 490 (1987); *Beasley*, 384 Ill. App. 3d at 1049. If a juror indicates some hesitancy or ambivalence in his or her answer, then the trial court must determine the juror's present intent by affording the juror the opportunity to make an unambiguous reply as to his or her present state of mind. *Kliner*, 185 Ill. 2d at 166-67; *Kellogg*, 77 Ill. 2d at 528.

¶ 23    Here, we agree with defendant that the trial court abused its discretion by refusing to ask each juror whether he or she found the presence of a mitigating factor. The jury's question starkly revealed the jury's uncertainty as to whether a split vote on the presence of a mitigating factor should (or should not) produce a verdict of guilty of first degree murder. After the jury delivered that verdict, the trial court's use of the standard polling question—"Was this then and is this now your verdict?"—did not resolve the uncertainty. To be sure, as shown by the jurors' unequivocal responses, there was no uncertainty as to whether the jurors' verdict was that defendant was guilty of first degree murder. The uncertainty at issue, however, concerned whether that verdict was wrongly the product of a split vote on defendant's guilt of second degree murder. For all we know, the jury deemed itself required to convict defendant of first degree murder even though as many as 11 jurors voted to convict him of second degree murder. In an ordinary case, this would amount to mere speculation, and thus we do not hold that a trial court must poll the jury on this issue in every case that involves instructions on second degree murder. (Indeed, we do not hold even that the trial court here must do so with a different jury on remand.) Here, however, in light of the jury's question, this is not mere speculation; it is, rather, a distinct possibility, which undermines any reasonable confidence in the verdict.

---

[1]Although the State asserts that defendant "links this argument intrinsically to the trial judge's response to the jury's question about a unanimous vote on the mitigating factors," the State does not suggest that this argument is likewise foreclosed by the invited-error doctrine.

¶ 24 In so holding, we distinguish *Raue*. There, the jury asked virtually the same question: " 'If we have all agreed to first degree murder and some of us feel there is a preponderance of evidence that a mitigating factor is present so that he is guilty of a lesser offense of second degree murder instead of first degree murder, the question is: If we cannot unanimously agree that there is a preponderance of evidence that a mitigating factor is present, is the final verdict first degree?' " *Raue*, 236 Ill. App. 3d at 951. Finding that the instructions had been explicit, and fearing that a yes-or-no answer would effectively direct a verdict, the trial court responded by rephrasing IPI Criminal 4th No. 7.06B: " '[i]t is the burden of the defendant to prove the existence of mitigating factors by a preponderance of the evidence, and if that burden has not been met, the verdict is one of first degree murder. If that burden has been met, the verdict is one of second degree murder. Whatever verdict you reach must be unanimous.' " *Raue*, 236 Ill. App. 3d at 951. The defendant was convicted of first degree murder. In holding that no plain error had occurred, the appellate court noted, among other things, that the trial court had gone on to poll the jury by asking each juror only whether first degree murder "was his or her verdict." *Id.* at 952.

¶ 25 However, the defendant there, unlike defendant here, did not ask the trial court to poll the jury differently. Further, although there the trial court's response to the jury's question merely rephrased the pertinent instruction—and although we express no opinion on the merits of that response—that mere rephrasing might have been sufficient to alleviate the jury's confusion. Here, whatever its merits, the trial court's response was very unlikely to have done so. Thus, here, defendant's request to poll the jury was valid, and the trial court should have granted it.

¶ 26                                   III. CONCLUSION

¶ 27 For the reasons stated, we reverse the judgment of the circuit court of Kane County and remand the cause for a new trial.

¶ 28 Reversed and remanded.