# Illinois Official Reports

## Appellate Court

---

**People v. Miller, 2017 IL App (1st) 143779**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN MILLER, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-3779 |
| Filed | June 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-1106; the Hon. Diane G. Cannon, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen L. Richards, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Eric Leafblad, Mary P. Needham, and Riebana E. Sachs, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Pierce and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant Melvin Miller was convicted by a jury of delivery of a controlled substance and sentenced to 12 years' incarceration. He argues on appeal that (i) the trial court failed to "conduct a meaningful inquiry" after a juror equivocated while answering a question posed during the jury polling after the guilty verdict, (ii) the prosecution failed to tender Miller's statement to police officers giving his name and date of birth, and (iii) the trial court erroneously refused his tendered jury instruction regarding prior inconsistent statements. Miller requests reversal of his conviction based on each of these alleged errors.

¶ 2     We affirm. First, while polling the jury, the trial court's response to a juror's equivocation did not prejudice Miller or affect the fairness of the trial or the integrity of the judicial process. Second, Miller forfeited the issue of whether the State violated the rules of discovery; moreover, Miller was not prejudiced by any nondisclosure of his "statement." Finally, Miller failed to show the trial judge abused her discretion in refusing a jury instruction on impeachment by prior inconsistent statements.

¶ 3                          BACKGROUND

¶ 4     Chicago police officer Lazaro Altamirano, Detective Donald Clark, and Sergeant Andrew Dakuras, team supervisor, were assigned to an eight-man undercover narcotics team conducting drug investigations in Chicago and the suburbs. Altamirano was the "designated undercover officer" who used marked bills (prerecorded Chicago police department "1505" funds) to buy heroin from a suspected drug dealer. On November 14, 2012, the team conducted an undercover heroin purchase from Miller in the area of Iowa Street and Harding Avenue in Chicago. Dakuras recorded the serial numbers of a $10 bill and two $5 bills that Altamirano used in the "buy" by writing them on his palm.

¶ 5     Altamirano approached Miller and asked him for two "blows" (street slang for heroin). Miller went into a nearby house and returned with a small package. Altamirano paid him for the package with $20 in marked "1505" bills. Clark, the surveillance officer, watched the transaction from a distance of 50 to 75 feet. After the buy, Clark radioed Dakuras that Miller was on the corner of Iowa Street and Lamon Avenue. Dakuras pulled up in an unmarked police car and saw Miller. Dakuras called Miller over. Dakuras got out of the car and made "small talk" with Miller about what he was doing, where he was going, and how long he had been on the corner. Dakuras asked Miller if he had any money, and Miller pulled out about $100 in various bills. Dakuras checked the serial numbers on all the bills and confirmed that three bills matched the "1505" funds Altamirano used in the buy. As Dakuras and Miller stood on the corner, Altamirano drove past and confirmed by radio that Miller was the individual who sold him the heroin.

¶ 6     Dakuras asked Miller his name and birthday, which Miller gave. At this point, defense counsel objected but was overruled, and the trial court denied counsel's request for a sidebar. Dakuras did not recall if Miller had identification or simply gave his name. Dakuras signed off on Clark's "Surveillance Supplementary Report" of the incident that stated Miller "was identified," but neither Clark nor Dakuras wrote in any report that Miller identified himself.

¶ 7     Miller was not arrested the same day as the "buy." Doing so would have exposed Altamirano as an undercover police officer. Instead, Dakuras returned to the police station

and obtained Miller's photograph from police computer records by his name and birthday. According to Dakuras, "[w]hen you have been previously arrested, you are given an identification record number." The following exchange then ensued:

> "MR. GASSMAN [defense counsel]: I will object again. This is coming out now for the first time.
>
> THE COURT: That will be stricken. Counsel, you have had the photographs.
>
> MR. GASSMAN: Not photographs, statements allegedly made by the suspect. It is coming out now for the first time.
>
> THE COURT: Sustained. That will be stricken."

¶ 8 Dakuras created a photo array of six photos including Miller's. All the photos were of black males fitting Miller's general description. On the same day, Altamirano viewed the photo array and selected Miller as the person who sold him the heroin. In December 2012, Miller was arrested on a warrant.

¶ 9 The parties stipulated that the package Miller sold to Altamirano contained 0.4 grams of heroin. The State rested, and defense counsel moved for a mistrial based on the State's failure to disclose Miller's incriminating statement, specifically the "very damning identifying information"—his name and birth date. The trial court found that the reports tendered to the defense contained the identifying information as Dakuras testified.

¶ 10 The defense rested without calling any witnesses.

¶ 11                                     Jury Instructions

¶ 12 At the jury instruction conference, the defense requested an impeachment instruction (Illinois Pattern Jury Instructions, Criminal, No. 3.11 (2d ed. 1981)) based on an inconsistent statement made on a former occasion that was not consistent with the witness's testimony in this case. The trial court denied the instruction after finding no perfection of impeachment at trial.

¶ 13                                       Jury Polling

¶ 14 The trial court polled the jury after its guilty verdict, asking "was this then and is this now your verdict." Eight jurors answered "yes" until the ninth juror was questioned:

> "THE COURT: [Mr. Juror], was this then and is this now your verdict forepersons? [Mr. Juror]. Is [Mr. Juror] here? Was this then and is this your verdict? [Mr. Juror], you have to answer yes or no.
>
> [JUROR]: That's now my verdict.
>
> THE COURT: Okay. I am going to ask that you continue your deliberations, ladies and gentlemen.
>
> [JUROR]: I said that's now my verdict.
>
> THE COURT: That's now your verdict.
>
> [JUROR]: Now.
>
> THE COURT: I meant when you signed it and is it now."

With that, the trial court moved to the next juror.

¶ 15    The jury convicted Miller of one count of delivery of a controlled substance; he was later sentenced to 12 years' incarceration.

¶ 16                              ANALYSIS
¶ 17                              Jury Polling

¶ 18    A defendant's right to poll the jury is a "substantial" right. *People v. Townsend*, 5 Ill. App. 3d 924, 925 (1972); see also *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 15 (criminal defendant's right to poll jury has long been recognized in Illinois and is rooted in Illinois common law). The purpose of polling a jury is to ensure unanimity and determine whether the verdict was freely and voluntarily reached. *People v. Wheat*, 383 Ill. App. 3d 234, 237 (2008).

¶ 19    Illinois courts have consistently held that the manner in which jury polls are conducted is within the discretion of the trial court and whether a juror freely assented to a verdict in a poll is a question of fact for the trial court to decide. *People v. Herron*, 30 Ill. App. 3d 788, 791-92 (1975); see also *Wheat*, 383 Ill. App. 3d at 238; *People v. Bennett*, 154 Ill. App. 3d 469, 477-78 (1987); *People v. Chandler*, 88 Ill. App. 3d 644, 650 (1980). If a juror indicates some hesitancy or ambivalence in answering, the trial court has the duty to ascertain the juror's intent. *People v. Kellogg*, 77 Ill. 2d 524, 528 (1979). The most frequent question used to poll jurors is " 'Was this then and is this now your verdict?' " *Id.*

¶ 20    Miller first argues that the trial court did not conduct an adequate inquiry of a juror who did not directly answer "yes or no" when asked "was this then and is this now your verdict?" Additionally, Miller claims error when, immediately after the juror answered, the trial court threatened to continue deliberations ("I am going to ask that you continue your deliberations, ladies and gentlemen.").

¶ 21    The State responds that Miller forfeited the issue because, even though his posttrial motion raised the issue, he did not contemporaneously object to the trial court's conduct.

¶ 22    Relying on *People v. McLaurin*, 235 Ill. 2d 478 (2009), Miller urges us to relax the forfeiture rule first enunciated in *People v. Sprinkle*, 27 Ill. 2d 398 (1963), where the defense counsel made no objection when the trial court conducted witness examinations during the defendant's jury trial and implied its own opinions of the case and the witnesses. In *Sprinkle*, the supreme court granted review of the defendant's claims and held "a less rigid application of the rule requiring timely and proper objection and preservation of rulings thereon should prevail where the basis for the objection is the conduct of the trial judge than is otherwise required." *Id.* at 401. The *Sprinkle* court observed that by objecting "to a comment or question by the judge," the lawyer may be "viewed with considerable suspicion and skepticism by the very group whom [the lawyer] is trying to convert to his [or her] client's view of the facts." *Id.* at 400. But in *McLaurin,* the supreme court noted: "[t]hat we have seldom applied *Sprinkle* to noncapital cases further underscores the importance of uniform application of the forfeiture rule except in the most compelling of situations." *McLaurin*, 235 Ill. 2d at 488. No compelling circumstance is present to excuse forfeiture.

¶ 23    The plain-error doctrine creates a limited exception to the general rule of forfeiture to protect the rights of the defendant and the integrity and reputation of the judicial process. *People v. Kitch*, 239 Ill. 2d 452, 461 (2011). The defendant bears the burden of persuasion in

a plain-error analysis, but the first step in plain-error review is to determine if an error has occurred. *Id.* at 461-62.

¶ 24 "[A]n opportunity must be afforded for the juror to express his [or her] opinion free from coercive influences that may have dominated the deliberations of the jury room." *Kellogg*, 77 Ill. 2d at 529. And although subject to review, the trial court's determination as to whether a juror freely assented to the verdict is a matter of discretion for the trial judge who not only hears the juror's response but also observes the juror's demeanor and tone of voice. *Id.* If a juror indicates some hesitancy or ambivalence in answering, the trial court should ascertain the juror's intent. *Id.* at 528.

¶ 25 The trial court polled the jury after its guilty verdict, asking "was this then and is this now your verdict." Eight jurors answered "yes." Then the ninth juror did not immediately answer. Moments later the ninth juror said "that's now my verdict" twice and then reiterated "now" a third time. The trial court must ascertain a juror's present intent by affording the juror the opportunity to unambiguously reply as to his or her present state of mind. *People v. Bennett*, 154 Ill. App. 3d 469, 476 (1987). Although this juror's answer was not an unambiguous and immediate "yes" or "no" answer, the juror did not express uncertainty as in *Bennett*, where a juror, during polling, stated that she was "not sure" whether it was her verdict (*id.*) or half-hearted agreement such as "Um—I have to say yes, I guess" in *People v. Beasley*, 384 Ill. App. 3d 1039, 1044 (2008).

¶ 26 *Wheat*, 383 Ill. App. 3d 234, is factually distinguishable. There, the trial court discharged the jury "two seconds" after reading the verdict. *Id.* at 236. The trial court continued to address the jury, however, and defense counsel attempted to interject some six seconds later but was prevented from speaking. *Id.* When the trial court paused in its remarks, defense counsel requested that the jury be polled at "the first reasonable opportunity," but the trial court refused. *Id.* at 240. The appellate court held the request was timely and reversed. *Id.* at 242. Unlike *Wheat*, the jury was polled properly with one juror slightly hesitating before answering.

¶ 27 Miller also cites *Kellogg* where, while polling the jury, the trial court failed to answer a juror's inquiry as to whether she could change her vote, and instead twice repeated the question " 'Was this then and is this now your verdict?' " until the juror answered in the affirmative. *Kellogg*, 77 Ill. 2d at 527. Here, the juror made no request to change his vote, and in fact stated his vote before the trial court's response, "I am going to ask that you continue your deliberations, ladies and gentlemen." The trial court's quickness might be considered premature and impolitic, but at no time did the juror change his vote or request any clarification. Not only did the juror not dissent, he stated three times that "now" his verdict was guilty. Under these circumstances, the jury verdict was unanimous, and no error occurred. The trial court's response was not so serious as to have affected the fairness of the trial or the integrity of the judicial process.

¶ 28                                                      Discovery Violation

¶ 29 Illinois Supreme Court Rule 412(a)(ii) (eff. Mar. 1, 2001) requires the State to disclose to defense counsel "any written or recorded statements and the substance of any oral statements made by the accused *** and a list of witnesses to the making and acknowledgement of such statements." The rule's purpose is to protect a defendant against surprise, unfairness, and inadequate preparation and to afford the defense an opportunity to investigate the

circumstances surrounding the statement. *People v. Sanchez*, 388 Ill. App. 3d 467, 473 (2009). Rule 412 applies to all statements made by a defendant, not only formal statements made to the authorities, that might have a bearing on the defendant's guilt or innocence. *Id.*

¶ 30 Miller argues that the trial court erred by overruling his objection to Dakuras's testimony that Miller gave his name and birthday and denying his motion for a mistrial. The State responds that Miller forfeited his claim because, even though he objected at trial, he failed to include it in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal"). The State also asserts that no discovery violation occurred because Miller was not in custody when the reports were written so the logical inference was that he gave his name and birthday.

¶ 31 The plain-error doctrine creates a limited exception to the general rule of forfeiture in the interest of protecting the rights of the defendant and the integrity and reputation of the judicial process. *People v. Kitch*, 239 Ill. 2d 452, 461 (2011). The doctrine allows consideration of an otherwise forfeited error when a clear or obvious error occurred and (i) the evidence is closely balanced, regardless of the seriousness of the error or (ii) the error is so serious that it affected the fairness of the defendant's trial regardless of the closeness of the evidence. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). As stated, the first step involves whether an error occurred. *Kitch*, 239 Ill. 2d at 461.

¶ 32 Rule 412 applies to statements that might have a bearing on the defendant's guilt or innocence (*People v. Cisewski*, 118 Ill. 2d 163, 172 (1987)) and requires the State to disclose the substance of a defendant's oral statements, not the statements verbatim. *People v. Batrez*, 334 Ill. App. 3d 772, 778 (2002). The wording of the police report did not explicitly state "Miller gave his name," but the essence was that the police learned his name and birthday. A person's name and birthday, without more, are simply identifying characteristics.

¶ 33 Even were we to find a Rule 412 violation, a new trial would be warranted only if the discovery violation prejudiced the defendant and the trial court failed to eliminate the prejudice. *Cisewski*, 118 Ill. 2d at 172; see also *People v. Weaver*, 92 Ill. 2d 545, 559 (1982). *Weaver* enumerates factors that bear on whether the defendant suffered prejudice and a new trial must be granted, including (1) the closeness of the evidence, (2) the strength of the undisclosed evidence, (3) the likelihood that prior notice could have helped the defense discredit the evidence, and (4) the willfulness of the State in failing to disclose the evidence. *Weaver*, 92 Ill. 2d at 560.

¶ 34 Miller asserts that the State's answer to discovery did not any mention that he gave his name and birthday to police on the day of the buy. Dakuras testified that he asked Miller his name and birthday and signed off on Clark's supplementary report of the incident. The report listed Miller's name and birthday but said that he "was identified." Defense counsel objected to Dakuras's testimony, which the trial court overruled. Miller maintains that he was unfairly surprised and prejudiced by the failure to disclose the alleged statement and that, but for this testimony, he could have plausibly argued that Miller was not the seller and that the police officers were mistaken.

¶ 35 Had Miller not given his name right away, no photographic array would have been possible and no identification would have been made by Altamirano. But lacking the photographic array identification made later that afternoon would not have changed the trial's outcome given the overwhelming nature of the evidence and given that experienced members

of a narcotics team methodically presented the steps they took to make this arrest. The testimony by three members of the narcotics team established Miller's identity independent of the photographic identification. A "commonsense assessment of the evidence" (*People v. Belknap*, 2014 IL 117094, ¶ 52) requires us to acknowledge when the facts of a particular case limit the range of reasonable inferences that might otherwise be drawn from circumstantial evidence. We do not find the evidence closely balanced.

¶ 36 Regarding the willfulness of the State in failing to disclose this statement, the police reports tendered to the defense in discovery included the information that Miller was identified by name and birthday. Miller, though, complains about the source of that information, and the wording in the report is not conclusive on this point. (The exhibit itself does not appear in the record.) But the result would have been the same even if the report was intended to mislead and the evidence regarding the photo array identification was excluded.

¶ 37 Finally, we note that Dakuras testified that he assembled the photographic array when he returned to the station and checked Miller's police department record, adding "When you have been previously arrested, you are given an identification record number." Defense counsel objected. The trial court responded with "That will be stricken. Counsel, you have had the photographs." Defense counsel then explained the objection was not to the photographs but to "statements allegedly made by the suspect" that were "coming out now for the first time." The trial court sustained the objection and ruled, "That will be stricken." With the court's rulings in place, as well as the jury instructions "You should disregard questions and exhibits which were withdrawn or to which objections were sustained" and "You should disregard testimony [and] exhibits which the court has refused or stricken," we find that any error that may have occurred in the presence of the jury was adequately addressed.

¶ 38 Thus, Miller was not prejudiced by any nondisclosure of his "statement."

¶ 39 Jury Instruction

¶ 40 In a related argument, Miller contends that the trial court's refusal to give his tendered impeachment instruction regarding prior inconsistent statements mandates a reversal. He maintains Dakuras was impeached by omission as the police report did not include the information that Miller gave his name and birthday.

¶ 41 "Jury instructions are intended to provide the jury with accurate legal principles to apply to the evidence so it can reach a correct verdict." *People v. Campbell*, 2012 IL App (1st) 101249, ¶ 44 (citing *People v. Pierce*, 226 Ill. 2d 470, 475 (2007)). When reviewing the adequacy of instructions, we consider all of the instructions as a unit in deciding if they fully and fairly cover the law. *People v. Cooper*, 2013 IL App (1st) 113030, ¶ 110. "The decision of whether to tender a particular instruction lies with the trial court and is reviewed under an abuse of discretion standard." *Campbell*, 2012 IL App (1st) 101249, ¶ 44 (citing *People v. Mohr*, 228 Ill. 2d 53, 65-66 (2008)). An abuse of discretion takes place when the instructions are either unclear, mislead the jury, or are not justified by both the evidence and the law. *Cooper*, 2013 IL App (1st) 113030, ¶ 108.

¶ 42 "The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises

a doubt as to the truthfulness of both statements." John William Strong, McCormick on Evidence § 34 at 114 (4th ed. 1992). The tendered instruction read: "The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind may be considered by you only for the purpose of deciding the weight to be given the testimony you heard from the witnesses in this courtroom." Illinois Pattern Jury Instructions, Criminal, No. 3.11 (2d ed. 1981) (hereinafter, IPI Criminal 2d No. 3.11).

¶ 43     The impeachment by omission instruction (IPI Criminal 2d No. 3.11) informs the jury that the believability of a witness may be challenged by evidence of a prior inconsistent statement and, accordingly, covers inconsistencies caused by both omissions and affirmative statements in the prior statement. *Campbell*, 2012 IL App (1st) 101249, ¶ 47 (citing *People v. Eggert*, 324 Ill. App. 3d 79, 82-83 (2001)). Under the rule for impeachment by omission it is permissible to use prior silence to discredit a witness's testimony if (1) it is shown that the witness had an opportunity to make a statement and (2) the witness fails to mention a fact under circumstances that make it reasonably probable that he or she would have mentioned them if true. *People v. Clay*, 379 Ill. App. 3d 470, 481 (2008).

¶ 44     The police report, prepared by Clark and signed by Dakuras, stated Miller was identified by name and birthday. That the wording did not specifically state that Miller identified *himself* by giving his name and birthday does not constitute an omission that could reasonably be expected to be "mentioned if true." Simply put, this argument is over semantics.

¶ 45     And, in considering the testimony of any witness, the trial court instructed the jury to "take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have and *the reasonableness of his testimony considered in the light of all of the evidence in the case*." (Emphasis added.) This court found no error in refusing the defendant's proffered IPI Criminal 2d No. 3.11 regarding impeachment by a prior inconsistent statement where the jury received the identical instruction. *People v. Luckett*, 273 Ill. App. 3d 1023, 1035 (1995) (" 'It is obvious to the layman that any contradiction of a witness' testimony calls into question the accuracy of that testimony, and if that testimony is disbelieved as to one matter, the veracity of the remainder is cast in doubt.' " (quoting *People v. McClellan*, 62 Ill. App. 3d 590, 596 (1978))).

¶ 46     Affirmed.