NOTICE

Decision filed 04/10/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250654-U

NOS. 5-25-0654, 5-25-0644, cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | White County. |
| | ) | |
| v. | ) | No. 23-CF-114, 23-CF-160 |
| | ) | |
| DAVID STREAN, | ) | Honorable |
| | ) | T. Scott Webb, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Cates and Justice Hackett concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court erred in depriving the defendant of the opportunity to respond to hearsay evidence presented at his sentencing hearing. The evidence at sentencing was closely balanced, and thus the defendant is entitled to a new sentencing hearing.

¶ 2                                   I. BACKGROUND

¶ 3     The defendant, David Strean, entered open guilty pleas in two separate White County cases arising from methamphetamine-related offenses. In case No. 23-CF-114, defendant pled guilty to unlawful possession of methamphetamine (720 ILCS 646/60(a) (West 2022)). In case No. 23-CF-160, defendant pled guilty to unlawful use of property to facilitate a methamphetamine offense (*id.* § 35(a)).

¶ 4     At the sentencing hearing held April 1, 2024, defendant presented evidence in mitigation concerning his age, health conditions, and efforts toward sobriety. Defendant testified that he had

1

completed residential treatment and had attended Alcoholics Anonymous and Narcotics Anonymous meetings regularly. He also testified about several medical conditions, including neuropathy, diabetes, hypertension, and back pain that he claimed might require surgery.

¶ 5     The trial court considered the presentence investigation report and the evidence presented by the parties. The court noted defendant's lengthy criminal history, much of which involved methamphetamine-related conduct. The trial court stated:

> "I understand that probation is the preferred disposition pursuant to 730 ILCS 5/5-6-1, and I've considered it, but I believe that your imprisonment is necessary for the protection of yourself and the public and that probation would deprecate the seriousness of the offender's conducts and would be inconsistent with the ends of justice.
>
> To have someone come through my courtroom, receive probation for a meth offense, come back, get picked up again, and then get out on bond, and then come back, get picked up again, think that they're going to get probation yet again, flies in the face of everything I stand for as a judge.
>
> Now, I'm not saying that I'm not giving you the benefit of all the good that you've been doing. I absolutely am. I mean, when I came in here today, you were 3 to 14 and 20 - 10, so you were in the neighborhood of 20 years. That's where I was. So I'm taking your health, all the good that you've done, everything else that's been in mitigation, and I'm giving you that benefit."

After weighing the relevant factors in aggravation and mitigation, the trial court sentenced defendant to seven years in the Illinois Department of Corrections (IDOC) in case No. 23-CF-114 and five years in IDOC in case No. 23-CF-160, to be served consecutively. Defendant filed

motions to reconsider sentence in both cases, arguing that the court failed to give adequate weight to his age, declining health, and rehabilitative efforts.

¶ 6    At the hearing to reconsider his sentence held on July 1, 2024, the defendant testified to changes in his medical condition and admitted some documentation from IDOC. The defendant called a friend, Timothy Buchanan, to testify that defendant was attending Alcohol and Narcotics Anonymous classes. The defendant's sister wrote a letter on the defendant's behalf, and the defendant made a statement in allocution. The following colloquy occurred between the trial court and the defendant:

"THE COURT: All right. You've got some very good people that I respect a lot in here on your behalf, and I don't know why the hell they're here. You were given probation. Mr. Aud gave you probation. I accepted the sentence because you told him you were dying. You had something wrong with your colon. You didn't have long to live.

Do you remember that conversation?

THE DEFENDANT: No, I don't.

THE COURT: I do.

THE DEFENDANT: And I had something wrong with my colon?

THE COURT: Yes. Yes. And so, he had some sympathy on you. He put you on probation.

Let's go back and let's rewind the clock to 2007. As the State's Attorney said, you got sentenced to the Department of Corrections in 2001 federally.

THE DEFENDANT: Yes, sir.

3

THE COURT: And then in 2007, I think it was a two-year bit. And then in 2011, five year gig. And then in 2016, six years. In 2017, got dismissed. For what reason, I don't know. You wanted to go to drug court.

Do you remember that? You tried to get into drug court. They wouldn't let you in. So ultimately, the case got dismissed.

Then in 2023, you got probation. You were handed a gift.

THE DEFENDANT: Yes, sir, I was.

THE COURT: All right. This isn't a two-way conversation any longer.

THE DEFENDANT: Okay.

THE COURT: Then in 2023 again, while on probation, you get picked up again. Always post bond no matter what the amount is, and I don't know where you come up with your wealth, Mr. Strean, but I couldn't post $15,000 cash to post bond, but you always did. I was trying to do you a favor to keep you clean and keep you in jail at the time, but you wouldn't hear of it.

You wanted me to reduce your bond. You were on probation and actually on bond at the time. I refused to do that because you needed to be cleaned up. You posted $15,000. I don't know where that comes from, but nonetheless, you're always able to post bond. And then you plead guilty and we come up here and we're ready for a sentencing hearing, and you got these back issues. Do you remember your attorney asking me for a continuance on the sentencing hearing, and you got these back issues, and you just need to get the surgery set up, and you get that taken care of, and you'd come back for the sentencing. And then, it's not very long at all, I see you in courtroom B with Ms. Dunn for her adoption case. Chirpy, happy-go-lucky, how you doing, Mr. Webb? All is fine in the world.

4

You're an addict.

THE DEFENDANT: Yes, sir, I am.

THE COURT: But you're also a con-man.

THE DEFENDANT: No, sir.

THE COURT: You pulled the wool over a lot of people's eyes for a very long time, and you're doing it with this guy because you have acted like this courthouse is a joke.

THE DEFENDANT: No.

THE COURT: You refused to take responsibility, and no matter what happens, whenever it comes to paying the piper, you refuse. Something else pops up. You got something else going on.

I mean, you're going to be 69 years old. Usually, addicts age out of it. They get to the point where you just can't keep up with the Jones's anymore. You can't fight that game, and you just get to be too old. But not you, Mr. Strean. I mean, you just keep right on rolling.

And I told you when I sentenced you, I gave you credit for those—what was it six, seven months that you made it clean? But that is a drop in the bucket for the rest of your life. And I am 100 percent convinced, if I put you on probation, it may go good for awhile, but the best indicator I have for the future is your past, and we all know where that's at. I considered your health. I gave you a break. Because, honestly, when I walked in that day for the sentencing hearing, you were looking at 20 years, but I cut it way back because of that.

The fact that I feel like you've thumbed your nose at the entire system by being given probation and then getting busted again and getting busted again, that's more than anybody

5

can deal with. I mean, you see people on the street and they're like, well, David Strean does all this stuff, but he never gets anything. I mean, it's a joke to the system.

And look at your family. You know, you apologized to them, and I'm really happy that you did. You have dragged them through hell for so very long, and a lot of them have been able to pick themselves up out of it. But if they were still that close to you, you'd be still right in it.

Motion denied."

¶ 7     This court previously remanded the cause, because defense counsel had failed to file the certificates required by Illinois Supreme Court Rule 604(d). *People v. David Strean*, No. 5-24-0827 (2015) (unpublished summary order under Illinois Supreme Court Rule 23 (c)(2). After remand, counsel filed the appropriate certificates and a new hearing on the motions to reconsider sentence was conducted on July 21, 2025. At that hearing held on July 21, 2025, the court took judicial notice of the prior testimony from Timothy Buchanan, defendant's friend, who had testified at the prior motion to reduce sentence. The defendant testified on his own behalf and detailed his worsening medical conditions after being in IDOC for 15 months. Towards the end of his testimony, the defendant testified that he lost his job in IDOC because he was "charged with impersonating an officer." The court then asked the following questions:

"THE COURT: So you say you were charged. They just wrote you a citation type thing and you got demerits—for lack of a better word—because of that?

THE DEFENDANT: For the impersonating—

THE COURT: Impersonating an officer, yes.

THE DEFENDANT: Yeah, I guess. Because, I mean, everybody thought it was—it was bull, which it was.

6

THE COURT: Do you have paperwork on that?

THE DEFENDANT: I do but I don't have it with me.

THE COURT: Okay.

THE DEFENDANT: But, I mean, like I said the lady that was over it, when they come in there they said, Well, Matlock wrote you a ticket."

¶ 8　Prior to issuing its ruling, the court stated:

"[THE COURT: ***] So the Court believes that its sentence whenever I sentenced you in 2024 was appropriate, but I can see that you're not the same physical—in the same physical shape that you were then. You're clearly deteriorating.

I guess what makes me so angry, Mr. Strean, and I don't—I'm not mad. I don't want to say that. But what disappoints me more than anything is the fact that your sister is out there for you. She was here at the sentencing for you. She's been there for you every step of the way, man. And she has watched you fail time and time and time again. And so has your daughter and your wife.

And, you know, in the course of your drug game I'll say, you've drug everybody else down with you too, David. I mean, you've affected so many lives because of this drug problem. And look at yourself, man. You've destroyed yourself. I mean, I checked—I think December you're going to have a 70th birthday, right? I mean, you can barely walk.

\* \* \*

And the reason I gave you the sentence that I gave you is I don't know how to get you to stop. I don't know that, but I think God is doing it on His own, and eventually it will all take care of itself.

7

I'm not saying that I'm not going to reduce your sentence because that was my plan after I saw you and started hearing from you and see what's going on with you. *I probably will.* But I want the information from this—*I was absolutely going to do it until I heard that you were charged with impersonating an officer.* Okay?

So I want the paperwork for that. I'll take it under advisement. I'll look at the paperwork, and I'll make the entry after that.

I mean it's just—do I think that you will change? I don't. But do I think that physically you're going to be able to do what you were doing, I think that's probably the case.

And I do have compassion for you, Mr. Strean. I know you think that I don't. I'm just trying to get you to stop. And I don't know any other way to get you to stop. Because I went back through your criminal history, man, and you've been at this for as—almost—I've been alive. It's been a very long time. And sooner or later, it needs to stop for everybody, and your family wants it to stop." (Emphases added.)

The defendant did not object to the trial court reviewing the documentation from IDOC.

¶ 9    On July 28, 2025, in a docket entry denying the defendant's motion to reconsider sentence, the trial court noted that the "report actually provide[d] that it was actually the defendant's second incident and that he had been advised not to undertake similar conduct in the future." The court continued that "prior to hearing of defendant's conduct, *it was going to reduce the defendant's sentence in 23CF160 to a consecutive period of probation. However, given the defendant's conduct while incarcerated,* coupled with the fact that there is no legal basis for a reduction of sentence,*" the court denied the motion. (Emphases added.) The defendant timely appealed.

8

¶ 10                                    II. ANALYSIS

¶ 11    The defendant argues that the trial court erred when it denied his motions to reconsider sentence because the court relied on unreliable double hearsay contained in the prison disciplinary report. Defendant acknowledges that he failed to preserve the issue but asks this court to review it under the plain error doctrine. The State argues that plain error review is not available to the defendant because 1) the error was invited and 2) the error complained of was not so egregious as to deny him a fair sentencing hearing.

¶ 12    "Under the invited-error doctrine, a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error." *People v. Manning*, 2017 IL App (2d) 140930, ¶ 33 (the invited error rule states that a party cannot complain of error that it brought about or participated in); *People v. Bush*, 214 Ill. 2d 318, 332 (2005) (when a party "procures, invites, or acquiesces" to a trial court's evidentiary ruling, even if the ruling is improper, he cannot contest the ruling on appeal). "Simply stated, a party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004); *People v. Cox*, 2017 IL App (1st) 1511536, ¶ 73. However, under the facts of this case, we find that the invited error doctrine is not applicable to the facts of this case. Further, the defendant's forfeiture of this issue does not preclude our review under the plain error doctrine.

¶ 13    We acknowledge that the defendant acquiesced when the court indicated it wanted to request the defendant's prison disciplinary records when he testified to losing his job in IDOC when he was charged with "impersonating a correctional officer." However, once the court had the records, they contained allegations and conclusions regarding the defendant's conduct that the defendant was not given the opportunity to review or explain. Nevertheless, the court relied on the

9

information contained in these documents to sentence the defendant through the use of a docket entry. Thus, we find it was error to deprive the defendant of the opportunity to respond to the hearsay reference within that report that this was his *second* offense for impersonating a correctional officer. "Other criminal conduct for which there has been no prosecution or conviction may be considered in sentencing. Such evidence, however, should be presented by witnesses who can be confronted and cross-examined, rather than by hearsay allegations in the presentence report, and the defendant should have the opportunity to rebut the testimony." *People v. Jackson*, 149 Ill. 2d 540, 548 (1992).

¶ 14    The State argues in its brief that if we do not apply invited error, the plain error doctrine precludes review. In the sentencing context, the defendant must show that a clear or obvious error occurred, and (1) the evidence at sentencing was closely balanced or (2) the error was so egregious as to deny the defendant a fair-sentencing hearing. *People v. Walsh*, 2016 IL App (2d) 140357, ¶ 16. It strains reason and logic to argue that the evidence was not closely balanced when the trial court emphasized that before reviewing the prison disciplinary report, it was going to reduce one of the defendant's sentences to a consecutive term of probation. Accordingly, we find that the evidence at sentencing was closely balanced and the admission of the IDOC documents affected the sentence handed down by the trial court. Therefore, the defendant is entitled to a new sentencing hearing.

¶ 15                                    III. CONCLUSION

¶ 16    For the above reasons, the defendant's sentence is vacated, and the case is remanded for a new sentencing hearing consistent with this order.


¶ 17    Reversed and remanded.

10